Tracey Diane McMANUS, Appellant,

v.

ANAHUAC INDEPENDENT SCHOOL DISTRICT, et al., Appellees.

No. 01–83–0345–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 26, 1984.

Shelton Smith, Fisher, Roch & Gallager, Houston, for appellant.

Richard Strahan, Houston, Kenneth Strahan, Anderson & Anderson, Liberty, for appellees.

Before BULLOCK, JACK SMITH and COHEN, JJ.

## OPINION

BULLOCK, Justice.

This is an appeal from a summary judgment in favor of the appellees, Anahuac Independent School District and Paul Rice (principal of the Anahuac High School during the Fall of 1980). The appellee school district successfully relied upon the doctrine of governmental immunity codified in Tex.Rev.Civ.Stat.Ann. art. 6252–19, § 19A (Vernon Supp.1982–1983). The appellee, Paul Rice, successfully relied upon the grant of professional immunity contained in Section 21.912 of the Texas Education Code. Two points of error are urged which, respectively, address these immunities.

Since an appeal from a summary judgment is involved, in order to sustain the trial court's judgment, this court must conclude that the movants (appellees herein) established entitlement thereto by conclusively proving all essential elements of their defenses. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979). The appellees must establish that they were entitled to judgment as a matter of law because there existed no genuine issue of material fact. *Id.*

Anahuac High School, a high school operated by the Anahuac Independent School District, had a long tradition of having a homecoming celebration involving a parade, bonfire, pep rally, and football game. The parade usually consisted of class floats, horses and riders, the school band, floats entered by various civic or business groups, and units of the local fire department. The sheriff's units also participated. The homecoming court of duchesses and queen candidates were featured. After the parade the student body, cheerleaders, football team, faculty, parents, and many former students would gather on campus, and, while the bonfire was burning, a pep rally would be conducted with coaches, players, and others speaking briefly to promote school spirit. The homecoming game would shortly follow at the high school stadium. The activity was monitored by the high school principal, faculty sponsors, coaches, and the volunteer fire department also stood by with a fire truck while the bonfire was in progress.

On October 31, 1980, the student body had gathered a stock of used lumber, trees, and other burnable material and placed it in a pile around a center pole. The pile of wood was to be torched about 5:00 p.m., by a group of senior students, and the ten seniors who were to torch the fire included the appellant, Tracey Diane McManus. This was to be their reward for working diligently on the bonfire activity.

Each student was given a wooden stake about four feet in length. On one end, a group of rags had been wrapped by the

students and tied with a heavy cord. The students were instructed to take their places around the base of the pile of wood. After their torch had been dipped in diesel fuel, they were then instructed to take their places around the base of the pile and after lighting the torches were advised to touch off the fire at the base of the pile.

When all students were ready, the appellee, Rice, gave the signal to torch the bonfire. Exactly what transpired after the torches were lit is disputed. The appellees state that the appellant attempted to throw her torch, rather than touching it at the base of the wood pile as instructed, and, thus, the rags on her own torch fell on her, burning her face, neck, and chest. The appellant, on the other hand, states that a torch was thrown over the wood pile and struck her.

On October 29, 1982, the appellant filed suit to recover damages against the appellees. After filing an answer, the appellees jointly moved for a summary judgment. Their motion was granted on February 10, 1983, the same date as the summary judgment hearing.

We affirm.

We note that the deposition of Paul Rice, referred to in the appellant's brief, was not before the trial court at the summary judgment hearing. Furthermore, that deposition is not part of the transcript presently before this court. It will not, therefore, be considered for purposes of review. Tex.R. Civ.Pro. 166–A(c).

The appellant's first point of error is as follows:

The trial court erred in granting the summary judgment because there exists a genuine issue of material fact as to whether the actions of the school district were proprietary in nature.

As heretofore mentioned, the appellee, Anahuac Independent School District, successfully moved for summary judgment based on governmental immunity pursuant to Tex.Rev.Civ.Stat.Ann. art. 6252–19 § 19A (Vernon Supp.1982–1983):

Sec. 19A. The provisions of this [Tort Claims Act] *shall not apply to school districts* or to junior college districts except as to motor vehicles. (Emphasis supplied).

The appellant seeks to avoid the preclusive effect of § 19A on her cause of action against the school district by urging that the pep rally/bonfire served no governmental/educational purpose, and, therefore, the school district does not enjoy the statutory immunity.

No Texas appellate court has ever held that a school district has served in a non-governmental capacity. The appellant admits that all of the reported cases have held that the activities addressed therein were governmental in nature and therefore immunity attached:

1) *Barr v. Bernhard*, 562 S.W.2d 844 (Tex. 1978): holding that maintaining a school farm was a governmental function;

2) *Braun v. Trustees of Victoria Independent School District*, 114 S.W.2d 947 (Tex. Civ.App.—San Antonio 1938, writ ref'd): holding that the planting, pruning, or trimming of a tree located near a school building was a governmental function;

3) *Calhoun v. Pasadena Independent School District*, 496 S.W.2d 131, 133 (Tex. Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.): holding that the school district was immune from liability for injury occurring during physical education class;

4) *Duson v. Midland County Independent School District*, 627 S.W.2d 428 (Tex.Civ. App.—El Paso 1981, no writ): holding that the furnishing of swings for use of school children during school hours is a governmental function;

5) *Coleman v. Beaumont Independent School District*, 496 S.W.2d 245 (Tex.Civ. App.—Beaumont 1973, writ ref'd n.r.e.): holding that painting work being performed by the plaintiff for the school district was a governmental function.

This summary of cases is not exhaustive, but merely illustrative. The case with facts most closely resembling the situation presently before this court is that of *Garza*

*v. Edinburg Consolidated Independent School District*, 576 S.W.2d 916 (Tex.Civ. App.—Corpus Christi 1979, no writ). Therein, the appellant was injured while playing on a freshman football team. A summary judgment was granted in favor of the school district, the coaches, and the trainer. The court stated:

> Plaintiff contends that the recreational and financial aspects of the Defendant district's football program constitute the football program an activity that is proprietary in nature. We agree with plaintiff that the school district's football program is both voluntary and extracurricular; we further agree that the program is financed in considerable proportion from gate receipts collected at games; and, we agree also with Plaintiff that the vast majority of those attending the games is made up of persons who reside within the territorial limits of Edinburg Consolidated Independent School District. However, these facts do not make the football program essentially either recreational or profit-motivated. The primary purpose of the football program is the educational benefit accruing to students involved in the program. Nothing could be more in tune with the governmental function of school districts. The aspects asserted by plaintiff do not make the football program of the defendant school district an activity that is proprietary in nature. *We hold that a public school's interscholastic football program is, as a matter of law, a governmental function of the school district.* (Emphasis supplied).

Appellant argues that certain language in the opinion delivered in *Barr v. Bernhard, supra*, at page 846, presupposes the existence of something *other than* a governmental function:

> The law is well settled in this state that an independent school district is an agency of the state *and, while exercising governmental functions*, is not answerable for its negligence in a suit sounding to tort. (Emphasis supplied).

The appellant questions why the above underlined language was included in the Supreme Court's opinion if, as the appellees argue, "... the activities of a school district are by their very nature governmental and that it does not function at any time in a proprietary manner." The appellant's position is that the *Barr* language quoted above is authority for the proposition that a school district *can* engage in some kind of activity other than a governmental/educational purpose, and, therefore, when it does, loses its immunity, and that a genuine issue of fact is presented in the instant case as to whether the actions of the school district were proprietary rather than governmental. The appellees reply that the school district is protected by the doctrine of governmental immunity except where the immunity has been expressly waived by the legislature.

■ Under the authority of *Garza v. Edinburg Consolidated Independent School District, supra*, we do not need to pursue this well-reasoned argument of the appellant since we hold, as a matter of law, that this particular school-sponsored and sanctioned bonfire/pep rally was so interrelated with the school's football program as to constitute a governmental function of the appellee/school district.

The appellant's first point of error is overruled.

The appellant's second and final point of error is as follows:

> The trial court erred in granting the summary judgment because there exists a genuine issue of material fact as to whether the actions of the principal were referable to his statutory duty to not allow a student to sustain bodily injury resulting from discipline.

■ As heretofore mentioned, appellee, Paul Rice, successfully moved for a summary judgment based on the immunity granted to professional employees pursuant to § 21.912 of the Texas Education Code. The applicable paragraph of § 21.-912 reads as follows:

> (b) No professional employee of any school district within this state shall be

personally liable for any act incident to or within the scope of the duties of his position of employment, and which act involves the exercise of judgment or discretion on the part of the employee, *except in circumstances where professional employees use excessive force in the discipline of students or negligence resulting in bodily injury to students.* (Emphasis supplied).

A literal reading of § 21.912(b) indicates that the proviso contained therein prescribes a waiver of the statutory immunity in two separate and distinct instances:

1) liability for excessive force in the discipline of students; and

2) liability for negligence resulting in bodily injury to students.

However, literal language notwithstanding, the Texas Supreme Court has interpreted § 21.912(b) in a restrictive manner:

There is language in the last clause which we find to be ambiguous... At first glance, a reading of the last clause would seem to indicate personal liability for professional school employees who use excessive force in the discipline of students or who "use negligence" that results in bodily injury to students.

\* \* \* \* \* \*

... the Legislature intended in the last clause of subdivision (b) to limit the liability of professional school employees to certain acts incident to the disciplining of students because this is the only manner in which Section 21.912 can reasonably be interpreted as a whole.

*Barr v. Bernhard, supra.*

Thus, in light of the *Barr* interpretation of § 21.912(b), the proviso contained therein simply addresses *acts of discipline* which, through the use of excessive force *or* negligence, result in bodily injury.

Against this background, the appellees contend that since Principal Rice was not disciplining a student, he was entitled to professional immunity as a matter of law. The appellant, on the other hand, poses a novel argument; that is, concluding that this is not an "excessive force" case, she

argues that since negligence can be an omission as well as an affirmative act, Principal Rice's *failure to discipline* resulted in bodily injury to her, and, therefore, he is personally liable within the meaning of § 21.912(b).

"Omission" as a form of negligence has never been definitively addressed by any Texas court with respect to § 21.912(b). However, when addressing the word "negligence" in the context heretofore discussed, the Texas Supreme Court in *Barr, supra,* expressly recognized that "negligence occurs as a result of an act *or omission* by an individual." *Id.* at 848.

The fact remains that cases in which a summary judgment was entered, and subsequently affirmed, in a § 21.912(b) context did not involve a "failure to discipline" contention. See *Barr, supra,* (student injured at a school farm when a metal pole gave way and the roof collapsed on a Saturday with no school personnel present); *Wagner v. Alvarado Independent School District,* 598 S.W.2d 51 (Tex.Civ.App.—Waco 1980, no writ) (student tripped and fell while carrying jar full of acid); *Schumate v. Thompson,* 580 S.W.2d 47 (Tex. Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) (student injured while jumping a stick during recess).

We hold that the appellee, Rice, is immune from liability in this case, since there is no material fact issue raised by competent evidence as to whether he was, at the time material herein, either performing or failing to perform a disciplinary duty.

The appellant's second and final point of error is overruled. Judgment of the trial court is affirmed.

For Publication. TEX.R.CIV.P. 452(b)