COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-357-CV

 

 

TYLER SCORESBY, M.D. AND                                             APPELLANTS

YADRANKO DUCIC, M.D.

 

                                                   V.

 

CATARINO SANTILLAN,                                                          APPELLEE

INDIVIDUALLY AND AS 

NEXT FRIEND OF SAMUEL

SANTILLAN, A MINOR

 

                                              ------------

 

            FROM THE 96TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                          I.  INTRODUCTION








In these accelerated, interlocutory appeals,
Appellants Tyler Scoresby, M.D. and Yadranko Ducic, M.D. (collectively, AAppellants@) appeal
the trial court=s order denying their motions to
dismiss the health care liability claims of Appellee Catarino Santillan,
individually and as next friend of Samuel Santillan, a minor.  See Tex. Civ. Prac. & Rem. Code
Ann. ' 51.014(9)
(Vernon 2008).  In three issues, Dr.
Scoresby argues that the trial court had no discretion but to dismiss Santillan=s health
care liability claims because Santillan=s tendered
civil practice and remedies code section 74.351(a) expert report is so woefully
deficient as to constitute Ano
report@ and
because Santillan did not serve a curriculum vitae of the expert who authored
the report before the 120-day statutory deadline had expired.  See id. ' 74.351(a),
(b) (Vernon Supp. 2008).  Dr. Ducic
raises the same arguments in three issues, additionally specifically contending
that the trial court abused its discretion by granting Santillan a section
74.351(c) thirty-day extension.  We
dismiss both appeals for want of jurisdiction.

                          II.  FACTUAL AND PROCEDURAL BACKGROUND








Santillan filed his original petition on January
17, 2008, alleging health care liability claims against Dr. Scoresby and Dr.
Ducic.[1]  Santillan alleged that Samuel was admitted to
JPS under the care of Dr. Scoresby and Dr. Ducic and with a preoperative
diagnosis of maxillary sinus neoplasm. 
On January 17, 2006, Samuel underwent a Aleft
mediomaxillectomy, excision of neoplasm of the maxilla, calvarial bone growth
and reconstruction of the maxilla and excision of a tumor of pterygopalatin
structures.@ 
During the procedure, Aan
incision was made in the right parietal region in a coronal fashion and carried
down the pericranium.@ 
According to Santillan, as a result of the surgery, Samuel suffered a Acortical
laceration with active bleeding from several medium-sized vessels in the area,@ which
resulted in Aright hemiparesis and significant
brain damage.@ 

Santillan timely served Appellants with the
purported expert report of Charles D. Marable, M.D.  The report is dated August 3, 2007.  Santillan did not serve Appellants with Dr. Marable=s
curriculum vitae within 120 days of the date that Santillan filed the original
petition.  Both Dr. Scoresby and Dr.
Ducic filed objections to the report and moved to dismiss Santillan=s health
care liability claims, contending, among other things, that Dr. Marable=s report
was, in effect, Ano report@ at all.








On July 17, 2008, the date scheduled for the
hearing on the motions to dismiss, Santillan filed and served Dr. Marable=s AAmended
Medical Report and curriculum@
vitae.  At the hearing on the motions to
dismiss, the trial court confirmed that the only document that was before it
and relevant to its ruling was Dr. Marable=s August
3, 2007 report, which was the only report served before the expiration of 120
days from January 17, 2008.[2]  The trial court denied both Dr. Scoresby=s and
Dr. Ducic=s motions to dismiss and granted
Santillan a thirty-day extension Ato cure
any deficiencies in his expert report.@[3]  These appeals followed.

                             III.  ANO REPORT v. DEFICIENT REPORT@








Dr. Scoresby in his first and second issues and
Dr. Ducic in his first issue argue that Dr. Marable=s timely
served report is so woefully deficient and lacking in containing the elements
necessary to constitute a civil practice and remedies code section 74.351(r)(6)
expert report that the report is no report at all.  Building on their argument that Dr. Marable=s report
is actually no report, Appellants contend that Santillan accordingly failed to
provide a statutory-compliant expert report within 120 days of filing
suit.  Hence, the trial court was
prohibited from granting Santillan a thirty-day extension to cure any deficiencies
in the report, and the trial court had no discretion but to dismiss Santillan=s health
care liability claims.  Thus, Appellants
both raise a Ano report v. deficient report@[4]
issue.  Appellants ask us to adopt the
line of reasoning that a report, though timely served, may nonetheless be so
deficient in meeting statutory requirements that the filing is no report at
all.  Appellants additionally each
contend that Dr. Marable=s report is no report because
Santillan failed to serve Appellants with Dr. Marable=s
curriculum vitae within 120 days of the date that Santillan filed suit and that
the trial court had no discretion but to dismiss the case for that reason.








Civil practice and remedies code section 74.351
provides that, within 120 days of filing suit, a plaintiff must serve expert
reports for each physician or health care provider against whom a liability
claim is asserted.  Tex. Civ. Prac. &
Rem. Code Ann. ' 74.351(a).  An expert report is a written report by an
expert that provides a fair summary of the expert=s
opinions regarding the applicable standard of care, the manner in which the
care rendered by the physician or health care provider failed to meet the
standard, and the causal relationship between that failure and the injury,
harm, or damages claimed.  Id. ' 74.351(r)(6);
see also Watkins, 2009 WL 153251, at *2 (Johnson, J., concurring)
(reasoning that section 74.351(r)(6) requires that for a document to qualify as
a statutory expert report, it must demonstrate (1) someone with relevant
expertise (2) has an opinion (3) that the defendant was professionally
negligent and thereby harmed the plaintiff). 
Although a report need not marshal all of a claimant=s proof,
it must include the expert=s
opinion on each of the elements identified in section 74.351.  Am. Transitional Care Ctrs. of Tex., Inc.
v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001).  If an expert report has not been served
within the 120-day period, the court, on the motion of the affected physician
or health care provider, shallCsubject to
an extension of time for a deficient reportCenter an
order that (1) awards to the affected physician or health care provider
reasonable attorney=s fees and costs of court incurred
by the physician or health care provider and (2) dismisses with prejudice the
claim with respect to the physician or health care provider.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(b),
(c); Badiga v. Lopez, 274 S.W.3d 681, 683 (Tex. 2009).  Section 74.351(b) makes clear that dismissal
is mandatory and extensions are prohibited if no reportCas
opposed to a merely deficient reportCis
served within the 120-day deadline imposed by section 74.351(a).  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(b);
Ogletree v. Matthews, 262 S.W.3d 316, 319B20 (Tex.
2007).  If a timely served document
intended by a claimant to be an expert report is determined by the trial court
to be deficient in complying with statutory requirements, the trial court may
grant one thirty-day extension to the claimant in order to cure the
deficiency.  Tex. Civ. Prac. & Rem.
Code Ann. ' 74.351(c).








At the time of this writing, the Supreme Court of
Texas has not had an opportunity to squarely address this Arecurring
and elusive@ Ano
report v. deficient report@
issue.  See Watkins, 2009 WL
153251, at *3 (Willett, J., concurring). 
The issue has only been addressed by a few members of the supreme court
in concurring opinions.  In his
concurring opinion in Ogletree, Justice Willett observed that the court
had apparently Alimit[ed] the universe of
possible reports@ to (1) absent reports, which
have not been filed at all and require dismissal of the case, and (2) deficient
reports, which have been timely filed and may receive an extension.  Ogletree, 262 S.W.3d at 323 (Willett,
J., concurring).  He explained that the
court=s
classification Aof all purported expert reports
as either absent or deficient may prove inapposite in rare casesCwhere
the claimed >report= is
actually no such thingCand inadvertently expand the
availability of the thirty-day extension provided by section 74.351(c) beyond
what the Legislature intended.@  Id. at 322.  In his view, there exists a third category of
possible reports:  Aa
document so utterly lacking that, no matter how charitably viewed, it simply
cannot be deemed an >expert report= at all,
even a deficient one.@ 
Id. at 323.  A trial court
reviewing such a Areport@ should
determine that a report Ahas not been served@ for
purposes of section 74.351(b) and dismiss the claim.  Id. at 324.








Referencing the third category of possible
reports discussed in Ogletree, Justice Willett explained in his
concurring opinion in Lewis v. Funderburk that the case presented the
court Awith an
actual sighting of this rare bird.@  253 S.W.3d 204, 209 (Tex. 2008) (Willett, J.,
concurring).  He opined that Funderburk=s
initial Areport@Ca Athank-you-for-your-referral
letter@Cwas no
report at all.  Id. at 210B11.  The defendant, however, did not timely appeal
the Ano
report issue.@ 
Id. at 208, 210 (AToday is
not the day for resolution of this important question, but it could have been,
had Dr. Lewis timely appealed the trial court=s ruling
on Funderburk=s first expert report, which
implicates no provider=s conduct.@).

The supreme court did not resolve the Ano
report v. deficient report@ issue
in Watkins.[5]  Justice Johnson filed a concurring opinion
joining the court=s judgment in denying mandamus
relief but additionally reasoning in part as follows:








The document referred to
in this case as an expert report is not a deficient statutory expert
report; it is not a statutory expert report at all.  While the document is authored by a
physician, it does not show that as of the date of the report the author held
any opinion as to (1) applicable standards of care for the treatment in
question, (2) the manner in which care rendered by the defendant physician
failed to meet the standards, or (3) the causal relationship between that
failure and the harm claimed.

 

Watkins, 2009 WL 153251, at *2 (Johnson, J.,
concurring).

Justice Willett filed a concurring opinion
agreeing that Dr. Watkins was not entitled to mandamus relief.  Id. at *3B6.  He also agreed with Justice Johnson that the
report was not a statutory expert report at all, succinctly stating the
specific issue as follows:  Awhether
a narrative that fails to include any expert opinion on the standard of care,
breach, or causation is merely deficient and thus eligible for an unreviewable
extension or tantamount to no report at all and thus ineligible for any
extension.@ 
Id. at *5.








Appellants direct us to several opinions from our
sister courts determining that a timely served document purporting to be an
expert report was not a statutory-compliant expert report.  See, e.g., Bogar v. Esparza, 257
S.W.3d 354, 364B69, 373 (Tex. App.CAustin
2008, no pet.) (concluding that the purported expert report at issue was no
report as to appellant because it failed to identify appellant, failed to
describe the applicable standard of care, failed to describe how appellant may
have breached the standard of care, and, consequently, failed to implicate any
person=s
conduct); Rivenes v. Holden, 257 S.W.3d 332, 338B39 (Tex.
App.CHouston
[14th Dist.] 2008, pet. denied) (determining that a timely served document
purporting to be an expert report did not implicate appellant=s
conduct and was not a statutory-compliant expert report as to appellant because
it offered no opinions concerning appellant=s
conduct, it failed to discuss how the care rendered by appellant failed to meet
the applicable standard of care, and it failed to set forth how appellant=s
failure to meet the standard of care caused plaintiff to suffer injury, harm,
or damages); Apodaca v. Russo, 228 S.W.3d 252, 255B58 (Tex.
App.CAustin
2007, no pet.) (holding that timely served expert report was no report as to
appellee because it failed to mention appellee and it failed to discuss how the
care rendered by appellee did not meet the applicable standard of care or how
appellee=s
failure caused the patient to suffer injury, harm, or damages).  Unlike these cases, some of our other sister
courts have rejected arguments that an expert report was so deficient that it
was no report at all.  See, e.g.,
Tenet Hosp., Ltd. v. Gomez, 276 S.W.3d 9, 12B13 (Tex.
App.CEl Paso
2008, no pet.); Cook v. Spears, 275 S.W.3d 577, 580B82 (Tex.
App.CDallas
2008, no pet.).








We do not resolve this issue in favor of
Appellants because OgletreeCthe
latest opinion by the supreme court that is relevant to the specific issue hereCforecloses
their arguments.  In Ogletree, the
plaintiffs asserted health care liability claims against Dr. Ogletree and Heart
Hospital of Austin.  262 S.W.3d at
317.  The plaintiffs timely filed expert
reports from a radiologist and three nurses. 
Id.  Dr. Ogletree timely
objected to the reports and moved to dismiss the case.  Id. at 318.  The trial court denied his motion and granted
the plaintiffs a thirty-day extension to cure deficiencies, and the court of
appeals held that it lacked jurisdiction over his appeal because the trial
court=s denial
of his motion to dismiss was coupled with the grant of an extension to cure the
deficient reports.  Id.








Similar to the arguments that Appellants make in
this case, Dr. Ogletree argued before the supreme court that Aas a
radiologist, Dr. Karsh may not opine on a urologist=s
standard of care and, therefore, no report was served that met the statutory
definition of an >expert report.=@  Id. at 319 (emphasis added).  Just like Appellants in this case, Dr.
Ogletree contended that because no report was served, the trial court had no
discretion to grant a thirty-day extension, and the denial of his motion to
dismiss was appealable.  Id.  The supreme court disagreed, stating, AThat is
not how the Legislature drafted the statute . . . .@  Id. 
Interpreting section 74.351, the court noted that Athe
Legislature recognized that not all initial timely served reports would satisfy
each of the statutory criteria@ and
that, A[a]s a
result, the amendments explicitly give the trial courts discretion to grant a
thirty day extension so that parties may, where possible, cure deficient
reports.@  Id. at 320.  Thus, Aa deficient
report differs from an absent report.@  Id. (emphasis added).

It is well established that as an intermediate
appellate court, we are bound by the pronouncements of the supreme court.  City of Mission v. Cantu, 89 S.W.3d
795, 809 n.21 (Tex. App.CCorpus Christi 2002, no pet.); Diggs
v. Bales, 667 S.W.2d 916, 918 (Tex. App.CDallas
1984, writ ref=d n.r.e.).  It is not the function of the court of
appeals to abrogate or modify established precedent; that function lies solely
with the supreme court.  Lubbock
County, Tex. v. Trammel=s
Lubbock Bail Bonds, 80 S.W.3d 580, 585 (Tex. 2002).








Whether or not the court in Ogletree
intended to Alimit[] the universe of possible
reports@ to
absent reports and deficient reports, that is the limitation that we reasonably
construe from the opinion=s analysis.[6]  At present, neither Ogletree nor any
other supreme court opinion holds that a timely served expert report containing
a narrative that fails to include any expert opinion on the standard of care,
breach, or causation is tantamount to no report at all and thus ineligible for
any section 74.351(c) extension.  Until a
majority of the supreme court so holds, such a determination by this court
would necessarily constitute a modification to Ogletree=s absent
or deficient expert report limitation, which would be improper because we are
bound as an intermediate appellate court by supreme court precedent.

In Badiga, the supreme court held that
when an expert report has not been timely served, but a trial court denies a
motion to dismiss and grants an extension to cure, an interlocutory appeal is
available to challenge the denial of a motion to dismiss.  Badiga, 274 S.W.3d at 684B85; see
also Watkins, 2009 WL 153251, at *1 (citing Badiga and stating, AIf no
report was served, interlocutory appeal was available.@).  Appellants argued in presubmission briefs
that we have jurisdiction over their appeals because Dr. Marable=s report
is no report at all.  However, in light
of binding precedent, we have not recognized that a third category of expert
reports exists in which a timely served expert report (such as the one in this
case) is, in effect, no report at all.[7]  Morever, it is undisputed that Santillan
timely served Appellants with Dr. Marable=s
report.  Thus, this is not an absent
report case.  Consequently, this is not a
ABadiga case@ in
which we may entertain an interlocutory appeal from the trial court=s denial
of a motion to dismiss because no report has been served.








When a report has been served and the trial court
both denies a motion to dismiss and grants an extension of time, the trial
court=s
rulings are inseparable.  Ogletree,
262 S.W.3d at 321.  If a deficient report
is served and the trial court grants a thirty-day extension, that decisionCeven if
coupled with the denial of a motion to dismissCis not
subject to appellate review.  Id.

Here, the trial court denied Appellants= motions
to dismiss, it granted Santillan a thirty-day extension to cure any
deficiencies in the report, and it considered Santillan=s
failure to serve a curriculum vitae as a deficiency in the report.  Ogletree dictates that we do not have
jurisdiction over these appeals.[8]  See Ogletree, 262 S.W.3d at 321.

                                          IV.  CONCLUSION

Having
determined that we do not have jurisdiction over Dr. Scoresby=s appeal and that we do
not have jurisdiction over Dr. Ducic=s appeal, we dismiss Dr. Scoresby=s appeal for want of
jurisdiction and we dismiss Dr. Ducic=s appeal for want of jurisdiction.  See Tex. R. App. P. 43.2(f).

 

 

BILL
MEIER

JUSTICE

 

PANEL:  DAUPHINOT, GARDNER, and
MEIER, JJ.

DELIVERED:  April 30, 2009











[1]Santillan also sued
Tarrant County Hospital District, a/k/a JPS Health Network, d/b/a John Peter
Smith (AJPS@).





[2]The trial court thus did
not consider Dr. Marable=s amended report and
curriculum vitae.





[3]The trial court granted
JPS=s motion to dismiss.





[4]See In re Watkins, No. 06-0653, 2009 WL
153251, at *3 (Tex. Jan. 23, 2009) (orig. proceeding) (Willett, J.,
concurring).





[5]Dr. Watkins challenged
the purported expert report served by the plaintiff, but the trial court
granted a thirty-day extension.  Watkins,
2009 WL 153251, at *1.  Dr. Watkins filed
an interlocutory appeal and an original proceeding in the court of appeals
asserting that the trial court abused its discretion by granting an extension.  Id. 
The court of appeals dismissed the interlocutory appeal for want of
jurisdiction and denied mandamus relief. 
Id.  Dr. Watkins sought
review of only the mandamus denial.  Id.  The court reasoned that A[t]he separate writings
join issue again today on the question whether the item served was a deficient
report or no report at all.@  Id.  However, it did not matter; A[i]f no report was
served, interlocutory appeal was available, so mandamus is unnecessary.  If the report was merely deficient, then an
interlocutory appeal was prohibited, and granting mandamus to review it would
subvert the Legislature=s limit on such review.@  Id.





[6]Indeed, Justice Willett
seemed to conclude similarly according to the portion of his concurring opinion
in which he recognized Athe Court=s classification of all
purported expert reports as either absent or deficient.@  Ogletree, 262 S.W.3d at 322, (Willett,
J., concurring).





[7]In Maris v. Hendricks,
we did not adopt Justice Willett=s reasoning that a third category of expert
reports exists; we merely stated in a footnote that we were Amindful of Justice Willett=s concurring opinion in Ogletree.@  262 S.W.3d 379, 385 n.5 (Tex. App.CFort Worth 2008, pet.
denied).





[8]We withdraw our September
23, 2008 letter in which we preliminarily determined that Athis court has
jurisdiction over [A]ppellants= appeals.@